THE HONORABLE ROBERT S. LASNIK

1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**FOR THE WESTERN DISTRICT OF WASHINGTON**

10

11

| | |
|---|---|
| STEVE KIM, individually and on behalf of all others similarly situated, | Case No. 2:20-cv-00032-RSL |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION** |
| v. | |
| U.S. BANCORP and U.S. BANK NATIONAL ASSOCIATION, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | NOTED FOR CONSIDERATION: February 23, 2021 |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-cv-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    INTRODUCTION ...................................................................................................... 1

II.   FACTUAL BACKGROUND ..................................................................................... 3
    A.   History of the Sales & Service Manager position and the Pacheco matter. ................ 3
    B.   SSM/BAMs were supervisors who supervised and managed other branch employees. ................................................................................................................................ 4
    C.   Kim and the Opt-Ins knew U.S. Bank's clear, unambiguous policies prohibited off-the-clock work and required employees to accurately record all time worked; as managers, they were responsible to enforce these policies.................................................. 5
        1.   U.S. Bank's policies are clear: employees must record and be paid for all time worked.................................................................................................................. 5
        2.   U.S. Bank trained supervisors, including SSM/BAMs, on its policies............. 5
        3.   U.S. Bank's timekeeping systems are designed to ensure accurate timekeeping so that SSM/BAMs are paid for the time they work....................................... 6
        4.   Underreporting time or requiring or permitting off-the-clock work also violates the Code of Ethics U.S. Bank requires its employees to follow.......... 7
    D.   The Opt-Ins are not similarly situated to Kim regarding alleged off-the-clock work. . 8
        1.   Kim and the Opt-Ins allegedly worked off-the-clock for a variety of reasons, none of which was a U.S. Bank policy. ......................................................... 8
        2.   The types of off-the-clock work Kim and the Opt-Ins allege varied significantly...................................................................................................... 11
    E.   The declarations that Kim relies on to support conditional certification are contradicted by the declarants' deposition testimony.................................................. 12

III.  LEGAL STANDARD................................................................................................ 14

IV.   ARGUMENT ............................................................................................................ 16
    A.   Conditional certification must be denied because the evidence shows SSM/BAMs were not the victims of a single decision, policy, or plan to deny off-the-clock overtime pay......................................................................................................... 16
        1.   As SSM/BAMs, Kim and the Opt-Ins knew U.S. Bank prohibited off-the-clock work....................................................................................................... 16
        2.   Because no common policy existed, Kim and the Opt-Ins' reasons for working off-the-clock are all across the board........................................................... 18
        3.   Kim and the Opt-Ins do not allege common tasks they performed off-the-clock, also demonstrating the absence of a common policy........................... 19
        4.   U.S. Bank paid SSM/BAMs overtime. ......................................................... 20
        5.   Kim's arguments and support for the Motion are unsupported by law and facts. ............................................................................................................... 21
    B.   If the Court grants conditional certification, it should limit notice to those SSM/BAMs who worked in the three years and 120 days before the Court's order at only those branches where Kim and the Opt-Ins claim to have worked off-the-clock. ............................................................................................................................ 22
        1.   Kim and the Opt-Ins have alleged off-the-clock work at a limited number of local branches. ............................................................................................... 22

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-CV-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

2. Notice should be limited to individuals employed as SSM/BAMs within three years and 120 days before conditional certification. ........................................ 23

3. If the Court conditionally certifies the action, it should order the Parties to meet and confer over the content and issuance of the notice rather than rubber stamp the notice Kim requests. ........................................................ 23

V.   CONCLUSION ..................................................................................... 24

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-CV-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Adair v. Wisc. Bell, Inc.*,
   No. 08-C-280, 2008 WL 4224360 (E.D. Wis. Sept. 11, 2008)................................16, 19

5

6

*Benson v. W. Coast Const.*,
   No. C06-1630RSM, 2007 WL 445456 (W.D. Wash. Feb. 6, 2007)........................15, 22

7

*Castle v. Wells Fargo Fin., Inc.*,
   No. C 06-4347SI, 2008 WL 495705 (N.D. Cal. Feb. 20, 2008)....................................20

8

9

*Chetwood v. T-Mobile USA, Inc.*,
   No. 19-CV-458-RSL, 2020 WL 1689730 (W.D. Wash. Apr. 7, 2020) (Lasnik, J.).....................25

10

11

*Douglas v. Xerox Bus. Servs. LLC*,
   No. C12-1798-JCC, 2014 WL 3396112 (W.D. Wash. July 10, 2014) ........................16

12

*Emonds v. Amazon.com, Inc.*,
   No. C19-1613JLR, 2020 WL 5993908 (W.D. Wash. Oct. 9, 2020)............................15

13

14

*Ezell v. Acosta, Inc.*,
   No. 4:16CV870 RLW, 2018 WL 3763834 (E.D. Mo. Aug. 8, 2018) ..............................16, 19, 20

15

16

*Folger v. Medicalodges, Inc.*,
   No. 13-1203-MLB, 2014 WL 2885363 (D. Kan. June 25, 2014) .........................20, 22

17

18

*Hoffmann-La Roche Inc. v. Sperling*,
   493 U.S. 165 (1989)........................................................................15

19

*Labrie v. UPS Supply Chain Sols., Inc.*,
   No. 08 Civ. 3182, 2009 WL 723599 (N.D. Cal. Mar. 18, 2009).................................22

20

21

*Lutz v. Huntington Bancshares Inc.*,
   2013 WL 1703361 (S.D. Ohio Apr. 19, 2013) .............................................24

22

23

*Ray v. California Dep't of Soc. Servs.*,
   No. CV 17-4239 PA (SKX), 2019 WL 6888050 (C.D. Cal. Dec. 11, 2019)................................24

24

25

*Richardson v. Wells Fargo Bank, N.A.*,
   No. 4:11–cv–0738, 2012 WL 334038 (S.D. Tex. Feb. 2, 2012)....................................16, 20, 22

26

*Richie v. Blue Shield of Calif.*,
   No. C-13-2693 EMC, 2014 WL 6982943 (N.D. Cal. Dec. 9, 2014)........................2, 16

27

28

*Settles v. Gen. Elec.*,
   No. 12-00602-CV-W-BP, 2013 WL 12143084 (W.D. Mo. Feb. 19, 2013)................................21

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-CV-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

*Simmons v. T-Mobile USA, Inc.*,
No. H-06-1820, 2007 WL 210008 (S.D. Tex. Jan. 24, 2007).........................................................20

*Songer v. Dillon Resources, Inc.*,
569 F. Supp. 2d 703 (N.D. Tex. 2008) .......................................................................................15

*Trinh v. JP Morgan Chase & Co.*,
No. 07-cv-1666 ...........................................................................................................................16

*Troy v. Kehe Food Distribs., Inc.*,
276 F.R.D. 642 (W.D. Wash. 2011) ...........................................................................................15

*Velasquez v. HSBC Fin. Corp.*,
266 F.R.D. 424 (N.D. Cal. 2010).................................................................................................21

*Williams v. Accredited*,
No. 1:05-CV-1681, 2006 WL 2085312 (N.D. Ga. Jul. 25, 2006) .................................................22

*Wilson v. Maxim Healthcare Servs., Inc.*,
No. 14 Civ. 789 (RSL), 2014 WL 7340480 (W.D. Wash. Dec. 22, 2014)....................................22

**Statutes**

Fair Labor Standards Act ...................................................................................................1, 3, 15, 24

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................................................24

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-CV-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

1

## I.    **INTRODUCTION**

2  Plaintiff Steve Kim cannot meet his burden to obtain conditional approval on his claim that

3 U.S. Bank forced its reclassified Sales & Service Managers, nationwide, to work off-the-clock

4 overtime without getting paid. To meet his burden, Kim must show that he and other reclassified

5 Sales & Service Managers were similarly situated – that is, that each was the victim of an unlawful

6 U.S. Bank policy to deny them pay for all overtime they worked in violation of the Fair Labor

7 Standards Act ("FLSA"). The Motion for Conditional Certification (the "Motion") and the testimony

8 of the Sales & Service Managers who supported the Motion with sworn declarations do not support

9 conditional certification.

10  The Motion is based on arguments and assertions that are either irrelevant or shown to be

11 false. For example:

12

13
- The Motion claims that Sales & Service Managers performed similar primary duties.[1] That assertion would be legally relevant if Kim was claiming he and others were misclassified as exempt from overtime, but it's not relevant in an off-the-clock case.

14

15

16

17

18
- The Motion states that "U.S. Bank does not pay BAMs premium overtime compensation for the hours they work in excess of 40 in a workweek."[2] Later it claims "U.S. Bank rarely grants preapproval" for overtime.[3] Both allegations are unfounded. ***U.S. Bank paid over $1.8 million in overtime wages*** to Sales & Service Managers over just a 17-month period.[4] Opt-In Allison Wile, for example, recorded and was ***paid overtime in almost half of the pay periods she worked*** as a Sales & Service Manager.[5] Opt-In Daniel Schneider admits he never even asked for approval to work overtime.[6] Opt-In Heather Staat admits that she was never denied preapproval when she asked for it.[7]

19

20

21

22
- The Motion states that "U.S. Bank prevents [Kim and other Sales & Serve Managers] from recording all of their overtime." But Opt-In Heather Staat, a Sales & Service Manager who later became a Branch Manager and supervised hourly Sales & Service Managers, admitted not only that as a supervisor she ***never denied*** a Sales & Service Manager's request for overtime and ***never asked, implied, or suggested*** that one work off-the-clock, but also that ***no U.S. Bank policy said Sales & Service Managers could not record all time they worked***.[8]

23

---

24 [1] Mot. at 8:15-16.

 [2] Mot. at 1:9-10.

25 [3] Mot. at 5:5-7.

 [4] Declaration of Jason Helgeson Decl. ¶ 3.

26 [5] Deposition of Allison Wile ("Wile Dep.") 176:9-177:23, Ex. 9; Declaration of Jennifer Pierre ¶ 12, Ex. 24. All depositions cited herein are attached in alphabetical order to the Declaration of Joan B. Tucker Fife ("Fife Decl.") filed concurrently herewith.

27 [6] Deposition of Daniel Schneider ("Schneider Dep.") 162:20-163:1.

 [7] Deposition of Heather Staat ("Staat Dep.") 95:15-22.

28 [8] Staat Dep. 15:22-16:16, 77:10-17, 85:12-87:22, 326:9-14, 327:22-330:3.

---

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:20-cv-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

1

- The Motion states that U.S. Bank "Branch Managers and District Managers have directed BAMs to change their timesheets to ensure they do not reflect overtime hours."[9] But Kim himself admitted his manager never did so, as did Opt-In Zachary Fischer, and Opt-In Daniel Schneider.[10]

Such "unsupported assertions of widespread violations are not sufficient to meet [a] Plaintiff's burden" to obtain conditional certification. *Richie v. Blue Shield of Calif.*, No. C-13-2693 EMC, 2014 WL 6982943, at *10 (N.D. Cal. Dec. 9, 2014).

Conditional certification is unwarranted not merely because the Motion is not legally or factually supported. More importantly, the evidence to which Kim and the Opt-Ins testified demonstrates they are not similarly situated to warrant conditional certification. The evidence shows, if anything, that Kim and the Opt-Ins decided themselves to work off-the-clock for various reasons, at some times and not others, when supervised by some Branch Managers and not when supervised by others, and often without the knowledge of their Branch Managers. Some testified that they learned that overtime should be preapproved, but they acknowledged that they would be paid for all overtime they recorded even if it were not preapproved. Others testified they worked off-the-clock for assorted personal reasons, including, in Kim's case, because of his manager's "tone of voice" and use of the phrase "help me understand" in a discussion about controlling overtime.[11] Opt-In Staat later became a Branch Manager supervising Sales & Service Managers testified that she never required a Sales & Service Manager to work off-the-lock and that her supervisors at the District level did not pressure her to have Sales & Service Managers work off-the-clock.

Based on anecdotal and situation evidence from six people who allegedly worked of-the-clock at six U.S. Bank branches,[12] Kim asks the Court to authorize notice to over 1,600 employees who worked in over 2,200 branches in 147 Districts, 58 Regions, and 25 states across the nation. For the foregoing reasons and as discussed below, conditional certification is not warranted.

---

[9] Mot. at 4:13-14.

[10] Deposition of Zachary Fischer ("Fischer Dep.") 109:9-18; Schneider Dep. 95:17-21, Kim Dep. 161:8-11.

[11] Deposition of Steve Kim ("Kim Dep.") 71:6-79:5, 162:11-163:25.

[12] The Motion claims that Kim and the Opt-Ins worked at 13 branches in five states (Mot. at 1:18-19), but he and the Opt-Ins claim they worked off-the-clock at only six branches. Wile Dep. 46:6-8, 123:20-23; Fischer Dep. 25:25-26:12, 134:9-136:10; Dkt. No. 26 ¶ 2; Dkt. No. 30 ¶ 2; Staat Dep. 72:10-73:4; Pierre Decl. ¶ 22, Ex. 34; Deposition of Mandy Bissell (A/K/A Vargas) ("Bissell Dep.") 61:2-24, Ex. 1.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:20-CV-00032-RSL

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

2

## II.   FACTUAL BACKGROUND

**A.   History of the Sales & Service Manager position and the *Pacheco* matter.**

The Complaint seeks to recover allegedly unpaid off-the-clock overtime pay on behalf of Kim and other "non-exempt Branch Assistant Managers (also known as Customer Service Managers and/or Sales and Service Managers)." (Dkt. No. 1 ¶ 1.) Kim alleges that in November 2016, U.S. Bank reclassified the class of Customer Service Managers and/or Sales and Service Managers from exempt to nonexempt employees, and that they worked unpaid overtime after the reclassification in violation of the FLSA. (*Id.* ¶¶ 3, 6-7.)

At the time of reclassification from exempt to nonexempt, the position at issue was called Sales & Service Manager, not Customer Service Manager.[13] (Customer Service Manager was a legacy title not used for the position during the period at issue.[14]) The Sales & Service Manager was considered the assistant manager position at U.S. Bank's Metro and Community brick and mortar bank branches outside California and had been classified as exempt before November 27, 2016.[15]

The Sales & Service Manager position was part of an earlier collective action case called *Pacheco v. U.S. Bancorp* brought and settled by two of Kim's counsel here—Outten & Golden LLP and Shavitz Law Group, P.A.[16] *Pacheco* alleged that U.S. Bank misclassified the position "Sales & Service Managers and Customer Service Managers" as exempt from overtime."[17] The *Pacheco* settlement covered all claims for overtime through the date U.S. Bank reclassified Sales & Service Managers in November 2016.[18] Kim now alleges in this case that U.S. Bank failed to pay overtime to the same group of employees *after* U.S. Bank reclassified them as nonexempt. (Dkt. No. 1 ¶¶ 6-7.)

Kim's lawyers reached out to *Pacheco* class members to see if they could drum up interest in an off-the-clock case for the period after the reclassification.[19] Out of a *Pacheco* class of almost 900 individuals, just six supported conditional certification. (Dkt. Nos. 16-21.) One, Justin Whisenhunt,

---

[13] Declaration of Frank Buchholz, ¶ 2.
[14] *Id.*
[15] *Id.* ¶ 25; Pierre Decl. ¶ 25.
[16] Fife Decl., Ex. ¶ 8, Ex. G.
[17] *Id.*, pp. 1, 3.
[18] *Id.*, pp. 19-20.
[19] Staat Dep. 53:15-54:14; Fischer Dep. 18:15-21:2; Wile Dep. 20:5-21; Bissell Dep. 14:20-25; Schneider Dep. 37:14-39:4.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-CV-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

3

withdrew from this case because he did not work as a Sales & Service Manager after the reclassification.[20] Five other *Pacheco* class members – Mandy Bissell, Heather Staat, Daniel Schneider, Zachary Fischer, and Allison Wile submitted declarations in support of conditional certification (the five are referred to herein as the "Opt-Ins").

A lot has changed since the *Pacheco* settlement. On April 1, 2018 U.S. Bank retired the Sales & Service Manager 1 and Sales & Service Manager 2 titles and mapped them and eight other positions into a single job title called Branch Assistant Manager.[21] The eight other job titles were from across several different business lines:

- In Store Co-Manager 1, In Store Co-Manager 2, In Store Branch Assistant 1, In Store Branch Assistant 2, On Site Branch Assistant 1, and On Site Branch Assistant 2 positions in the In Store On Site business line that had a reporting and leadership structure separate from the Metro and Community branches; and

- Nonexempt Sales & Service Coordinator 1 and Sales & Service Coordinator 2 positions that had been used at traditional branches in California and were not reclassified in November 2016 because they were already classified as nonexempt.[22]

Neither Kim nor any Opt-In ever worked in any of the eight other positions mapped into the Branch Assistant Manager position, and the In Store, On Site, and Sales & Service Coordinator positions were not at issue in *Pacheco*.[23] At the end of 2019, U.S. Bank eliminated the Branch Assistant Manager position entirely.[24]

Because many positions were consolidated into the Branch Assistant Manager position, for the purpose of this Opposition the positions Kim and the Opt-Ins held at traditional bank branches are referred to as "SSM/BAMs."

**B.      SSM/BAMs were supervisors who supervised and managed other branch employees.**

SSM/BAMs, along with Teller Coordinators and Branch Managers, were supervisors at the traditional retail bank branches. SSM/BAMs reported up to the Branch Manager (if any), who reported to the District Manager, who reported to the Regional Manager.[25]

SSM/BAMs were typically responsible for scheduling branch employees and ensuring the

---

[20] Dkt. No. 63.
[21] Dkt. Nos. 26, 27, 29-32.
[22] Buchholz Decl ¶ 3; Pierre Decl. 25.
[23] Fife Decl. ¶ 8, Ex. G, pp. 1, 3.
[24] Buchholz Decl. ¶ 5.
[25] Pierre Decl. ¶ 26.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-cv-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

employees in the branch complied with U.S. Bank's Code of Ethics and Business Conduct (the "Code of Ethics").[26]

**C.     Kim and the Opt-Ins knew U.S. Bank's clear, unambiguous policies prohibited off-the-clock work and required employees to accurately record all time worked; as managers, they were responsible to enforce these policies.**

       **1.     U.S. Bank's policies are clear: employees must record and be paid for all time worked.**

U.S. Bank's Pay and Time Reporting Policy is unambiguous and thorough. It:

- Requires employees record all time they work;[27]

- Specifically prohibits employees from underreporting time they work;[28]

- Specifically prohibits managers from instructing or permitting an employee to underreport time they work;[29] and

- Mandates that employees be paid overtime for any time they work more than 40 hours in a week *regardless of whether the overtime was approved in advance*.[30]

Kim and the Opt-Ins were aware that the Pay and Time Reporting Policy applied to them and that they would be paid for all overtime they recorded on their timesheets, whether preapproved or not.[31] As Opt-In Schneider testified, "if you recorded [overtime], you would get paid for it."[32]

       **2.     U.S. Bank trained supervisors, including SSM/BAMs, on its policies.**

To ensure SSM/BAMs and other supervisors understood it policies, U.S. Bank required all supervisors to take annual Wage and Hour Laws training. Kim and each of the Opt-Ins took the training at least once during the time they were a SSM/BAM.[33] The trainings reminded them that off-the-clock work was prohibited, and that if they worked off-the-clock or permitted employees they supervised to work off-the-clock, that they as managers could face discipline up to termination:

---

[26] *See e.g.,* Fischer Dep. 36:13-37:18, Ex. 3 at DEFKIM000406-407; Schneider Dep. 56:15-57:9, Ex. 3 at DEFKIM000406-407.
[27] *See, e.g.,* Pierre Decl. ¶ 2, Ex. 1 at DEFKIM000609.
[28] *Id.*
[29] *Id.*
[30] *Id.* (emphasis added).
[31] Staat Dep. 154:3-155:8, Ex. 6, 202:9-203:15; Kim Dep. 161:4-7, 220:6-222:24; Wile Dep. 117:14-118:25, Ex. 7; Wile Dep. 227:16-21; Fischer Dep. 91:24-94:5, Ex. 6, 109:9-18; Schneider Dep. 163:13-19.
[32] Schneider Dep. 162:24-163:19.
[33] Schneider Dep. 83:9-84:15, Ex. 5, 87:12-89:2, Ex. 6; Kim Dep. 223:2-224:21, Ex. 7, 225:18-226:2; Staat Dep. 133:11-134:14, Ex. 4, 138:24-139:13, 153:22-154:2, Ex. 5; Fischer Dep. 67:4-22, 70:9-19, Ex. 4, 99:12-100:23, Ex. 7; Wile Dep. 83:3-84:12, 86:25-88:9, Ex. 4, 88:16-90:13, Ex. 5; Bissel Dep. 177:3-22, Ex. 4, 186:5-187:7, Ex. 5; Pierre Decl. ¶ 10, Exs. 11-16.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
Case no.: 2:20-cv-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

5

"It is U.S. Bank's policy to comply with all applicable wage and hour laws at the federal and state levels. That means U.S. Bank:

- Pays for all hours worked.

- Pays all overtime worked.

- Provides all required rest and meal breaks.

- Keeps detailed and accurate records of employees' hours worked[.]

**Non-exempt employees are not allowed to work 'off-the-clock,' or perform work that is not recorded on their timesheet. If they do, whether or not you know about it, both you and your employee could face disciplinary action, even termination."[34]**

The trainings repeatedly highlighted the role supervisors like SSM/BAMs had in following, enforcing, and reporting violations of Bank policies:

"As a U.S. Bank manager, your role is critical in the daily management of employees to ensure that U.S. Bank is in compliance with legal requirements. ***We depend on you*** to make sure that all employees [] are paid properly. . . . ***We count on you*** to [] ensure that non-exempt employees keep detailed and accurate records of hours worked daily."[35]

**3.      U.S. Bank's timekeeping systems are designed to ensure accurate timekeeping so that SSM/BAMs are paid for the time they work.**

Kim and the other Opt-Ins used weekly time sheets to record their time, and then certified that the time was accurate.[36] The certification that Kim and each Opt-In signed each week stated:

"I certify that the time recorded on this time sheet and any attached log is accurate[.] I understand that it is a violation of company policy to over-report or under-report time worked. I understand that failure to [] record any time worked (approved or not), is a violation of company policy."[37]

The timesheets also ensured that employees who worked during a meal period would be paid for the time by instructing them not to record a meal period if they performed any work while on a break.[38]

---

[34] *See, e.g.,* Pierre Decl. ¶ 9, Ex. 6 at DEFKIM000916, DEFKIM000936; Ex. 7 at DEFKIM000946-947, DEFKIM000964; Ex. 8 at DEFKIM000972, DEFKIM000990; Ex. 9 at DEFKIM000999, DEFKIM001017; Ex. 10 at DEFKIM001026, DEFKIM0001043.
[35] *Id.* at DEFKIM000916-000917 (emphasis added).
[36] Staat Dep. 169:10-20, Ex. 8; Wile Dep. 105:11-106:11; Fischer Dep. 143:18-144:20, Ex. 9; Schneider Dep. 110:13-11:19, Ex. 7; Bissell Dep. 193:9-194:1, Ex. 6; Kim Dep. 174:25-175:17.
[37] *See, e.g.,* Fischer Dep. 143:18-144:20, Ex. 9.
[38] *Id.*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-CV-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

SSM/BAMs transitioned to an electronic timekeeping system called HRTime in or around June 2018.[39] Before an employee submits time at the end of a workweek, they are prompted with an approval statement to confirm that the hours recorded are accurate and not underreported:[40]



The approval statement worked: Wile testified that all overtime she recorded in HRTime was paid.[41]

### 4.  Underreporting time or requiring or permitting off-the-clock work also violates the Code of Ethics U.S. Bank requires its employees to follow.

To ensure U.S. Bank's employees understand the importance of following the Bank's wage and hour policies, its Code of Ethics makes clear that failing to record all time worked and underreporting time worked violate not only U.S. Bank policy but its Code of Ethics:[42]

Any employee can report any potential violation of the Code of Ethics using an anonymous toll-free number or web-based form.[43] Any complaints of underpayments are immediately investigated, and, if an employee is found to be underpaid, U.S. Bank pays them what they are owed.[44]

---

[39] Helgeson Decl., ¶ 4.
[40] Helgeson Decl. ¶ 4.
[41] Wile Dep. 227:16-21.
[42] Pierre Decl. ¶ 4, Ex. 3 at DEFKIM000438.
[43] *Id.* at DEFKIM000415.
[44] Pierre Decl. ¶ 7.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.:  2:20-cv-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

1    As a consequence of the policy, reminder, certification, and ethical principles discussed

2  above, from November 27, 2016 to March 31, 2018 (the period between the reclassification and

3  when the Sales & Service Manager position was dropped into the broader Branch Assistant Manager

4  title), U.S. Bank paid over $1.8 million to the Sales & Service Managers in Kim's proposed

5  collective – including to almost every Opt-In.[45]

6  **D.    The Opt-Ins are not similarly situated to Kim regarding alleged off-the-clock work.**

7    Kim and the Opt-Ins allegedly worked off-the-clock at just six retail branches in four states.

8  Kim allegedly worked off-the-clock at one branch in Washington; Fischer allegedly worked off-the-

9  clock at one branch in Tennessee; Bissell, Schneider, Staat separately claim to have worked off-that

10  three branches in Missouri; and Wile allegedly worked off-the-clock at one branch in Wisconsin.[46]

11  By contrast, U.S. Bank had over 2,200 retail branches nationwide.[47]

12    **1.    Kim and the Opt-Ins allegedly worked off-the-clock for a variety of reasons,
        none of which was a U.S. Bank policy.**

13    Kim and the Opt-Ins testified to different reasons for allegedly performing of-the-clock work.

14  But their reasons are tied not to an overall U.S. Bank decision or policy or refusal to pay for certain

15  types of work at certain times. Instead, their reasons are tied to their individual perceptions about

16  information they learned about or overheard from some, but not all, local supervisors. For example,

17  Kim testified that his Branch Manager and District Manager never told him that he had to work off-

18  the-clock, but that he should not *work more* than 40 hours in a week.[48] Yet Kim testified not only

19  that he recorded overtime as a Sales & Service Manager but that "of course" he got paid for it.[49]

20    Opt-In Wile worked at three different branches – Mayfair, Sussex, and Butler – under three

21  different Branch Managers. She testified that she recorded and was paid for all overtime at two of

22  the three branches.[50] At Butler, Wile's Branch Manager *never* asked her not to record all her time,

23  never suggested she should not record all her time, and never refused to pay her for overtime hours

---

[45] Helgeson Decl. ¶ 3; *see e.g.,* Schneider Dep. 122:2-123:5, Ex. 8 at DEFKIM000638; Fischer Dep. 179:17-180:6, Ex. 10, 201:17-202:2; Wile Dep. 175:25-178:18, Ex. 9.
[46] Wile Dep. 46:6-8, 123:20-23; Fischer Dep. 25:25-26:12, 134:9-136:10; Dkt. No. 26 ¶ 2; Dkt. No. 30 ¶ 2; Staat Dep. 72:10-73:4; Pierre Decl. ¶ 22, Ex. 34; Bissell Dep. 61:2-24, Ex. 1.
[47] Pierre Decl. ¶ 27.
[48] Dkt. No. 26, ¶¶ 17-18.
[49] Kim Dep. 160:18-161:7.
[50] Wile Dep. 46:6-8, 58:22-59:6, 65:25-66:2, 218:23-219:3.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-cv-00032-RSL

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

8

she recorded.[51] At Mayfair, a *different* Branch Manager also *never* required Wile to work off-the-clock and *always* paid her for all hours worked.[52] Wile testified that she worked off-the-clock only at Sussex, where a third Branch Manager allegedly "persuaded" her to work off-the-clock.[53] But when the Sussex Branch Manager took a leave of absence, a different Branch Manager took over temporarily and again allowed Wile to record and get paid for all overtime she worked.[54]

Opt-In Schneider never even asked his Branch Manager to approve overtime. Why? In part, he was afraid of "getting yelled at" because his Branch Manager got upset at *another* employee for working overtime.[55] But Schneider's Branch Manager never said he could not work overtime, and Schneider admitted that "if you recorded [overtime], you would get paid for it."[56] To that end, he recorded and was paid overtime while a SSM/BAM ***even though he never asked for preapproval***.[57]

Opt-In Fischer admitted that "If my time sheet said [I] worked over forty hours, then I got paid overtime[.]"[58] He testified that he felt pressure not to record overtime because employees at his branch received an email from the local Branch Manager saying employees "need to keep your time under forty hours or at forty hours."[59] But no one instructed him that he could not record more than 40 hours if he worked it.[60] He too recorded and was paid for overtime while a SSM/BAM.[61]

Opt-In Staat, meanwhile, has worked at U.S. Bank since 2003.[62] She was a nonexempt employee for many years in different positions where she always recorded and was paid for all overtime.[63] When she became an exempt Sales & Service Manager in June 2015, she supervised other employees, reviewed and signed their timesheets, and has no knowledge that any of the employees she supervised ever falsified their time.[64] Staat claims that she worked off-the-clock only

[51] Wile Dep. 120:19-121:11, 121:18-123:18, 124:9-15.
[52] Wile Dep. 121:24-122:19. 124:9-21.
[53] Wile Dep. 120:8-18, 123:20-23.
[54] Wile Dep. 184:1-8, 184:22-185:17.
[55] Schneider Dep. 151:4-152:13.
[56] Schneider Dep. 162:24-163:19.
[64] Schneider Dep. 122:2-123:5, Ex. 8 at DEFKIM000638; *Id.* at 162:24-163:1.
[58] Fischer Dep. 109:9-18, 156:14-158:6.
[59] Fischer Dep. 156:14-157:8.
[60] Fischer Dep. 157:20-23.
[61] Fischer Dep. 156:14-157:8, Ex. 8 at DEFKIM000638.
[62] Staat Dep. 19:19-22.
[63] Staat Dep. 66:8-21.
[64] Staat Dep. 84:23-86:1.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-cv-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

9

at the Crystal City, Missouri branch after the Sales & Service Manager position was reclassified to nonexempt.[65] She had two supervisors during her time at Crystal City.[66] She testified that on one occasion when she had worked more than 40 hours in one week, her first supervisor commented that she should smooth hours she worked across two weeks to avoid having more than 40 hours in either week.[67] At the deposition, Staat reviewed all of her timesheets but could not recall the week when the supervisor made this comment or any week she underreported her time because of the comment.[68] Staat's next Branch Manager at the same branch never told her to smooth her hours over two weeks, or falsify her timesheet, or underreport the hours she worked, or work without getting paid overtime, or work while clocked out during a meal period.[69] Thus, at the same branch Staat had two different experiences depending on the supervisor. And she had "no reason to believe" that any District Manager (i.e., the second-level supervisor) wanted employees to work off-the-clock.[70]

Staat was later promoted to be a Branch Manager and in that role supervised SSM/BAMs.[71] As a Branch Manager supervising SSM/BAMs who are among the employees Kim seeks to conditionally certify as an off-the-clock collective here, Staat never:

- Asked, implied, or suggested that a SSM/BAM work off-the-clock;
- Asked a SSM/BAM to change their own time sheet;
- Told a SSM/BAM to remove hours from a time sheet and instead take time off the following week;
- Pressured a SSM/BAM not to record all the time they worked;
- Told a SSM/BAM they could not work overtime; or
- Denied a SSM/BAM's request to work overtime.[72]

Indeed, Staat does not think that any SSM/BAM she supervised worked off-the-clock.[73] And no District Manager ever pressured her to have Sales & Service Managers work off-the-clock.[74]

---

[65] Staat Dep. 72:10-16.
[66] Staat Dep. 22:23-23:13.
[67] Staat Dep. 74:15-75:6, 77:2-7.
[68] Staat Dep. 170:1-18, 244:6-15, Ex. 9.
[69] Staat Dep. 81:15-83:11.
[70] Staat Dep. 90:20-23.
[71] Staat Dep. 31:2-8.
[72] Staat Dep. 77:10-17, 85:12-87:22, 326:9-14.
[73] Staat Dep. 88:21-25.
[74] Staat Dep. 89:1-8.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-cv-00032-RSL

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071
Tel: 213-615-1700

10

**2.     The types of off-the-clock work Kim and the Opt-Ins allege varied significantly.**

This is not a case where Kim and all the Opt-Ins claim that U.S. Bank failed to pay for some type of task, such as logging on, or donning or doffing, or security checks. Rather, their testimony varied, making clear there was no common illegal practice or plan. Kim, for example, testified to types of off-the-clock work that were much different than the types alleged by the Opt-Ins.

**Pre-Shift Work**: Plaintiff Kim allegedly arrived before his scheduled shift to train Bankers,[75] clean the branch by picking up garbage outside and clearing leaves out of the drains on rainy days,[76] pull various reports,[77] and "go[] through the drawers" to make sure no work was left over from the night before.[78] The Opt-Ins were not similar; they were different from Kim, and even different from each other. No Opt-In testified that they spent any time off-the-clock training Bankers before their shift. Opt-Ins Wile, Staat, Fischer, and Schneider, didn't clean the branch off-the-clock.[79] Staat, Fischer, and Schneider didn't pull reports or go through drawers off-the-clock.[80] At two of the three branches where Wile worked, she did not perform any off-the-clock work, pre-shift or otherwise.[81] Many Opt-Ins recorded that they started work before their branch typically opened.[82]

**Post-Shift Work**: Kim alleges his post-shift off-the-clock work included scheduling duties, meeting with his Branch Manager and District Manager, handling calls from customers received after hours, meeting with customers, and offering back office support to other offices.[83] The Opt-Ins were not similar to Kim; their experiences were different from Kim and from each other. No Opt-In spent any time off-the-clock after their shift offering back office support to other offices or meeting with their Branch Manager or District Manager. Staat did not participate in any calls after her shift off-the-clock other than pre-scheduled customer call nights as to which she can't remember whether

---

[75] Kim Dep. 88:11-23, 118:1-119:6.
[76] Kim Dep. 123:1-18.
[77] Kim Dep. 117:6-22, 126:13-17.
[78] Kim Dep. 124:2-6.
[79] Fischer Dep. 218:21-219:1; Schneider Dep. 140:1-7; Wile Dep. 142:16-143:23; Staat Dep. 266:19-24.
[80] Staat Dep. 268:3-270:18, 350:6-11; Schneider Dep. 140:1-7; Fischer Dep. 226:4-11.
[81] Wile Dep. 218:10-222:9.
[82] *Compare, e.g.,* Dkt. No. 27, ¶ 7 *with* Pierre Decl. ¶ 19, Ex. 31 at DEFKIM000735, DEFKIM000738, DEFKIM000741; Dkt. No. 32, ¶ 8 *with* Pierre Decl ¶ 20, Ex. 32 at DEFKIM000785-DEFKIM000788; Dkt. No. 30, ¶ 7 *with* Pierre Decl. ¶ 21, Ex. 33 at DEFKIM000793; and Dkt. No. 31, ¶ 7 *with* Pierre Decl. ¶ 18, Ex. 30 at DEFKIM000822, DEFKIM000824.
[83] Kim Dep. 131:25-132:24, 137:22-139:12, 151:1-152:16.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-CV-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

11

or not she recorded her time.[84] Wile worked at two branches where she never worked off-the-clock after the end of her shift, or at any other time.[85] And Schneider alleged post-shift off-the-clock work that neither Kim nor any other Opt-In allegedly performed, such as returning to the branch because a "finicky vault[] safety deposit box" triggered the branch alarm.[86] And many of the Opt-Ins recorded that they stopped work after their branch typically closed.[87]

**Work During Meal Periods**: Kim alleges that during his lunch break, he worked off-the-clock with customers and was sometimes interrupted by his Branch Manager or other branch employees who needed him to approve a transaction.[88] He also received calls/texts on his cell phone because he never turned his phone off, even though no one told him he had to leave his phone on.[89] Fischer, on the other hand, testified "I could take a three-hour lunch," and his time records demonstrate that he took meal breaks as long as 2 hours and 15 minutes.[90] Wile worked at two branches where she never worked off-the-clock during meal periods.[91] And even though Kim said his lunches were interrupted by his Branch Manager, Staat and Fischer said they worked off-the-clock during meal periods for the opposite reason – their Branch Managers *were not in the branch* during meal periods.[92]

**Off-Site Work**: Kim alleges he performed off-the-clock work outside the branch, including meeting with clients and working on loan paperwork on Sundays and working on a U.S. Bank leadership program.[93] No other Opt-In testified that they met with clients or worked on loan paperwork on their days off or that they worked on a leadership program off-the-clock.

**E.**     **The declarations that Kim relies on to support conditional certification are contradicted by the declarants' deposition testimony.**

Kim relies on just six declarations, including his own, to support his Motion. But the

---

[84] Staat Dep. 258:12-259:7, 262:22-263:17; 265:4-266:21.
[85] Wile Dep. 218:10-222:9
[86] Schneider Dep.140:8-142:16.
[87] *Compare, e.g.,* Dkt. No. 27, ¶ 7 *with* Pierre Decl. ¶ 19, Ex. 31 at DEFKIM000747, DEFKIM000755; Dkt. No. 32, ¶ 8 *with* Pierre Decl ¶ 20, Ex. 32 at DEFKIM000786; Dkt. No. 30, ¶ 7 *with* Pierre Decl. ¶ 21, Ex. 33 at DEFKIM000793; and Dkt. No. 31, ¶ 7 *with* Pierre Decl. ¶ 18, Ex. 30 at DEFKIM000822, DEFKIM000824.
[88] Kim Dep. 250:21-251:12.
[89] Kim Dep. 186:9-187:3.
[90] Fischer Dep. 147:8-11, Ex. 9 at DEFKIM000785.
[91] Wile Dep. 218:10-222:9.
[92] Staat Dep. 333:15-334:4; Fischer Dep. 158:13-159:6.
[93] Kim Dep. 150:10-14; Dkt. No. 26, ¶ 7.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-CV-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

12

declarants' deposition testimony directly contradicts statements in their declarations. For example:

| | **Declaration Statement** | **Testimony** |
|---|---|---|
| Staat | "I recall that . . . I was questioned by Jennifer Sullivan, who was administrative assistant for Donny Carver, the District Manager. **Ms. Sullivan advised me on each occasion that going forward I could not record overtime.**"[94] | Q. Ms. Sullivan never told you you couldn't record overtime. She just told you that if you recorded it, it needed to be preapproved. Is that fair? <br><br> [. . .] <br><br> A. **She would not tell me that I could not record my hours that I worked.** <br><br> Q. And just **so the record is perfectly clear, what Ms. Sullivan said to you is if you work overtime, you need to get it pre-approved, correct**? <br><br> [. . .] <br><br> A. From what I remember, **correct.** <br><br> Q. **And she never told you you can't record overtime hours that you have worked, did she?** <br><br> [. . .] <br><br> A. **She did not.** <br><br> [. . .] <br><br> Q. **And is there any time when you worked at U.S. Bank that you ever asked for pre-approval and the answer was no?** <br><br> A. **Not that I can recall.**[95] |
| Fischer | "In the event that any branch employee recorded overtime, we would receive an email from our District Manager, Jeff Sanbor, **admonishing us for recording overtime and instructing us not to do so again.**"[96] | Q. And **did any of those E-mails** [from Mr. Sanbor] **tell you that you could not record time that you worked over forty hours**? <br><br> A. **No.**[97] |
| Fischer | Post-shift off-the-clock work included "cleaning the branch."[98] | Q. And then did you have to clean up the branch[?] <br><br> A. We had a cleaning crew. I believe they came later.[99] |
| Schneider | "[. . .]pre-approval to work more than 40 hours **was very rare and difficult to** | Q. **Did you ever ask [your Branch Manager] for approval to work** |

[94] Dkt. No. 29, ¶ 14.
[95] Staat Dep. 95:15-22, 315:1-317:16.
[96] Dkt. No. 32, ¶ 15.
[97] Fischer Dep. 157:12-23.
[98] Dkt. No. 32, ¶ 10.
[99] Fischer Dep. at 218:21-24.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-CV-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

13

| | Declaration Statement | Testimony |
|---|---|---|
| | **obtain**."[100] | **overtime**? |
| | | A. **I don't recall ever asking, no**.[101] |
| Schneider | Off-the-clock pre-shift opening and post-shift closing procedures included "cleaning the branch."[102] | Did not perform any cleaning duties before or after his shift.[103] |
| Bissell | I usually "worked **beyond my scheduled hours**" to arrive early to perform opening procedures, including "**cleaning the branch**."[104] | Q. [Did you **clean**] **before your scheduled shift**[?] |
| | | A. **No**.[105] |
| Bissell | "I regularly worked from home on my days off to answer **calls or texts from my Branch Manager and the tellers** at the branch[.]"[106] | Q. And that was always [] calls and texts with Jaclyn [the Branch Manager], right? |
| | | A. Correct. |
| | | Q. Never from anyone else at the bank? |
| | | A. **No, always with Jaclyn**.[107] |
| Bissell | "[O]ther BAMS, including **Cory Matthis and Jade Kelly, were paid similarly to me and failed to receive overtime pay** for all of the hours they worked in excess of 40 in a given workweek."[108] | Q. So you **don't know specifically whether any other [BAMs/SSMs] experienced the same thing that you did**? |
| | | A. **No**.[109] |
| | | In fact, **Matthis and Kelly were never** employed as **nonexempt BAM/SSMs**.[110] |

## III.    LEGAL STANDARD

For FLSA collective actions, district courts in the Ninth Circuit follow a two-stage certification process that includes a conditional certification stage followed by a decertification stage. *Troy v. Kehe Food Distribs., Inc.*, 276 F.R.D. 642, 649 (W.D. Wash. 2011). At the conditional certification stage, "District courts have discretion, *in appropriate cases*, to implement [FLSA collective] actions by facilitating notice to potential plaintiffs." *Hoffmann-La Roche Inc. v. Sperling*,

---

[100] Dkt. No. 30, ¶ 15.
[101] Schneider Dep. 162:20-163:1.
[102] Dkt. No. 30, ¶¶ 8, 10.
[103] Schneider Dep. at 140:1-7; 144:23-145:2.
[104] Dkt. No. 27, ¶ 8.
[105] Bissel Dep. at 96:20 - 97:1.
[106] Dkt. No. 27, ¶ 11.
[107] Bissell Dep. 148:8-17.
[108] Dkt. No. 27, ¶ 19.
[109] Bissell Dep. at 15:4-16:5.
[110] Pierre Decl. ¶ 24.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-CV-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

1   493 U.S. 165, 169 (1989) (emphasis added).

2          A case is appropriate to be conditionally certified only where the plaintiff demonstrates that

3   he and the potential collective members are "similarly situated" and that the judicial system would

4   "benefit[] by efficient resolution in one proceeding of common issues of law and fact arising from

5   **the same alleged [illegal] activity**." *Hoffmann-La Roche*, 493 U.S. at 170 (emphasis added). To

6   show that proposed collective members are similarly situated, the plaintiff must demonstrate that

7   they "were together the **victims of a single decision, policy, or plan**." *Benson v. W. Coast Const.*,

8   No. C06-1630RSM, 2007 WL 445456, at *2 (W.D. Wash. Feb. 6, 2007) (emphasis added).

9          Although the standard for conditional certification is fairly lenient, "[t]he district court

10  cannot function as a rubber stamp for any and all claims that come its way under this statute."

11  *Emonds v. Amazon.com, Inc.*, No. C19-1613JLR, 2020 WL 5993908, at *3 (W.D. Wash. Oct. 9,

12  2020). Conditional certification must be denied where the evidence shows that the proposed

13  collective members are not similarly situated because "employers should not be unduly burdened by

14  a frivolous fishing expedition conducted by the plaintiff at the employer's expense." *Songer v.*

15  *Dillon Resources, Inc.*, 569 F. Supp. 2d 703, 707 (N.D. Tex. 2008).

16         Whether a proposed collective is similarly situated is a fact-specific determination. *Trinh v.*

17  *JP Morgan Chase & Co.*, No. 07-cv-1666 W (WMC), 2008 WL 1860161, at *3 (S.D. Cal. Apr. 22,

18  2008). Where some discovery has occurred, courts consider and weigh all available evidence,

19  including deposition testimony, to decide conditional certification. In the *Douglas* case Kim cites,

20  for example, the Court applied the first-stage standard for conditional certification, considered

21  deposition testimony, and denied conditional certification of an off-the-clock case. *Douglas v. Xerox*

22  *Bus. Servs. LLC*, No. C12-1798-JCC, 2014 WL 3396112, at *4 (W.D. Wash. July 10, 2014); *See*

23  *also Richie*, 2014 WL 6982943, at *8 (applying the first-stage standard, considering deposition

24  testimony, and denying conditional certification of an off-the-clock claim).

25         The Court should deny conditional certification where "resolution of each Plaintiff's claim

26  will require individualized inquiries about his or her specific managers' policies and practices."

27  *Richardson v. Wells Fargo Bank, N.A.*, No. 4:11–cv–0738, 2012 WL 334038, at *4 (S.D. Tex. Feb.

28  2, 2012); *see also Ezell v. Acosta, Inc.*, No. 4:16CV870 RLW, 2018 WL 3763834, at *5 (E.D. Mo.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-CV-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

15

Aug. 8, 2018) (denying conditional certification where the plaintiffs showed that their off-the-clock claims stemmed from a variety of circumstances based on their own choices and beliefs, as well as instructions from different supervisors and their subjective interpretation of those instructions). "Where the plaintiff has not made at least a modest factual showing that certification is appropriate, [i]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Adair v. Wisc. Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *4 (E.D. Wis. Sept. 11, 2008) (citations omitted).

# IV.   ARGUMENT

## A.   Conditional certification must be denied because the evidence shows SSM/BAMs were not the victims of a single decision, policy, or plan to deny off-the-clock overtime pay.

Kim and almost every Opt-In testified that their supervisors never denied their request to work overtime or told them they could not record the time they worked,[111] and the Motion does not identify a single unlawful policy that applied to all SSM/BAMs and prevented them from getting paid for all overtime worked. Instead, Kim relies on an allegation irrelevant to an off-the-clock claim: that SSM/BAMs performed similar job duties. But he does not allege they all performed similar off-the-clock duties that U.S. Bank refused to pay for, such as security checks, donning and doffing, or logging into a computer system. Kim and the Opt-Ins' testimony demonstrated the *absence* of a common policy, including because the reasons they allegedly worked off-the-clock and the work they allegedly performed varied between and among them and at most was directed or tolerated at a branch level to the extent supervisors even knew about it. Because no policy existed to deny overtime pay to SSM/BAMs, U.S. Bank paid a significant amount of overtime to SSM/BAMs.

### 1.   As SSM/BAMs, Kim and the Opt-Ins knew U.S. Bank prohibited off-the-clock work.

Kim and the Opt-Ins acknowledged that U.S. Bank maintains policies, trainings, practices, and ethical requirements designed to ensure nonexempt employees including SSM/BAMs get paid

---

[111] *See e.g.*, Staat Dep. 15:22-16:16, 26:1-30:1, 77:10-17, 85:12-87:22, 326:9-14; Fischer Dep. 157:12-23; Schneider Dep.162:20-163:1; Kim Dep. 159:16-161:19.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-CV-00032-RSL

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

16

1  for all hours they worked.[112] The Pay and Time Reporting policy is reinforced with the certifications

2  on time sheets and HRTime reminding employees to record all time worked accurately.[113]

3        Beyond the policies and reminder certifications for employees submitting their time,

4  supervisors, including the Opt-Ins as SSM/BAMs, are given detailed trainings that emphasized the

5  necessary role they play to ensure employees are properly paid, including for all overtime hours.[114]

6  And the Code of Ethics drives home the importance of accurate timekeeping and paying for all hours

7  worked by making them ethical standards all supervisors and employees must uphold.[115]

8        As SSM/BAMs, Kim and the Opt-Ins were supervisors and did not allow off-the-clock for

9  their subordinates:

10     • Fischer never instructed the Tellers he supervised to work off-the-clock.[116]

11     • Kim never asked or pressured Tellers at his branch to work off-the-clock.[117]

12     • Wile did not allow employees to work off-the-clock because "that was U.S. Bank's
          policy and I made sure my employees did not work off the clock."[118]

13

14     • Schneider worked with the Tellers and Teller Coordinators he managed "to assure
          that they all worked their scheduled hours, as well as reported any overages[,]" and
          never "told anybody to underreport the time that they worked[.]"[119]

15

16  And Staat, the SSM/BAM who became a Branch Manager and supervised SSM/BAMs, never asked,

17  implied, pressured, or suggested that anyone she supervised work off-the-clock.[120] In fact, **she**

18  **testified that no U.S. Bank policy required employees to work off-the-clock.**[121] Did Staat not

19  allow employees to record all the overtime hours they work? Staat: **"I would not say that is true."**

---

20  [112] Schneider Dep. 83:9-84:15, Ex. 5, 87:12-89:2, Ex. 6; Kim Dep. 223:2-224:21, Ex. 7, 225:18-226:2; Staat Dep.
     133:11-134:14, Ex. 4, 138:24-139:13, 153:22-154:2, Ex. 5; Fischer Dep. 67:4-22, 70:9-19, Ex. 4, 99:12-100:23, Ex. 7;

21  Wile Dep. 83:3-84:12, 86:25-88:9, Ex. 4, 88:16-90:13, Ex. 5; Bissel Dep. 177:3-22, Ex. 4, 186:5-187:7, Ex. 5.
     [113] Staat Dep. 169:10-20, Ex. 8; Wile Dep. 105:11-106:11; Fischer Dep. 143:18-144:20, Ex. 9; Schneider Dep. 110:13-
     11:19, Ex. 7; Bissell Dep. 193:9-194:1, Ex. 6; Kim Dep. 174:25-175:17; Helgeson Decl. ¶ 4.

22  [114] Schneider Dep. 83:9-84:15, Ex. 5, 87:12-89:2, Ex. 6; Kim Dep. 222:25-223:20, Ex. 7, 225:18-226:2; Staat Dep.
     133:11-134:14, Ex. 4, 138:24-139:13, 153:22-154:2, Ex. 5; Fischer Dep. 67:4-22, 70:9-19, Ex. 4, 99:12-100:2, Ex. 7;

23  Wile Dep. 83:3-84:12, 86:25-88:9, Ex. 4, 88:16-90:13, Ex. 5; Bissel Dep. 177:3-22, Ex. 4, 186:5-187:7, Ex. 5; Pierre
     Decl. at Exs. 6 at DEFKIM000916, DEFKIM000936; Ex. 7 at DEFKIM000946-947, DEFKIM000964; Ex. 8 at

24  DEFKIM000972, DEFKIM000990; Ex. 9 at DEFKIM000999, Ex. 10 at DEFKIM001017, DEFKIM001026,
     DEFKIM0001043.

25  [115] Pierre Decl. Ex. 3 at DEFKIM000438; Ex. 4 at DEFKIM000489; Ex. 5 at DEFKIM000544.
     [116] Fischer Dep. 83:12-15.

26  [117] Kim Dep. 86:3-5.
     [118] Wile Dep. 110:9-111:5.

27  [119] Schneider Dep. 77:23-78:21.
     [120] Staat Dep. 85:12-87:21.

28  [121] Staat Dep. 329:10-12.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-CV-00032-RSL

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

17

Is there a U.S. Bank policy that requires people to work off-the-clock? Staat: "**Not that I am aware of**." A policy telling employees not to record their time accurately? Staat: "**Not that I am aware of**." A policy to deny employees overtime they worked? Staat: "**Not that I am aware of**." A policy that U.S. Bank would not pay for certain tasks? Staat: "**Not that I am aware of**." A policy saying employees could not record all time worked? Staat: "**Not that I am aware of**." A policy that said an employee had to work off-the-clock on opening procedures? Staat: "**Not that I am aware of**." A policy requiring employees to work off-the-clock cleaning a branch? Staat: "**Not that I am aware of**." A policy requiring employees to work off-the-clock participating in conference calls before or after the shift or on days off? Staat: "**Not that I am aware of**."[122] Staat is not aware of such policies because they do not exist.

> **2.**     **Because no common policy existed, Kim and the Opt-Ins' reasons for working off-the-clock are all across the board.**

Even assuming the testimony of Kim and the Opt-Ins to be true, the reasons they decided to ignore the Bank's clear policies, reminders, trainings, and Code of Ethics and instead work off-the-clock at times was based on their perception of "the decisions of individual [local] supervisors, rather than a company-wide policy or plan[.]" *Adair*, 2008 WL 4224360, at *7 (denying conditional certification). At most, the testimony from Kim and the Opt-Ins "shows that their off the clock claims stem from a variety of circumstances based on their own choices and beliefs, as well as instructions from different supervisors and their subjective interpretation of those instructions." *Ezell*, 2018 WL 3763834, at *5 (denying conditional certification of an off-the-clock case).

For example:

- Although Staat recorded and was paid overtime, she allegedly worked off-the-clock after one of her local supervisors once suggested she smooth her hours over two weeks to avoid reporting over 40 hours in either week.[123] But when she became a Branch Manager and supervised SSM/BAMs, she made sure her SSM/BAMs recorded and were paid for all time worked.[124]

- Staat also testified that "no one said you could not record overtime," but a local administrative assistant who was not in her chain of command told her and others

---

[122] Staat Dep. 327:22-330:3.
[123] Staat Dep. 74:15-75:6, 77:2--17, 85:12-87:21, 326:9-14.
[124] *Id.*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.:  2:20-CV-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

18

they needed to "try to get all your work done in forty hours a week."[125]

- Schneider knew U.S. Bank's policy prohibited off-the-clock work. He chose to violate the policy because he was afraid of "getting yelled at" (except when he apparently wasn't afraid and recorded and was paid for overtime).[126]

- Fischer "felt pressure to work what I needed to work to complete my tasks and only report the forty hours" because of an email from his local Branch Manager saying employees "need to keep your time under forty hours or at forty hours" (except when apparently didn't feel pressure and instead recorded and was paid for overtime).[127]

- Only one of Wile's three local supervisors "persuaded" her to work off-the-clock. Despite knowing U.S. Bank's policy prohibited off-the-clock work, Wile "just went along with it" in part because she didn't want the local supervisor to get "in trouble because . . . she was a single mom."[128] Wile's two other local supervisors ensured she was paid for all overtime she worked.[129]

"[N]othing in th[is] evidence shows a company-wide policy of expecting employees to work overtime yet refusing to pay them." *Ezell*, 2018 WL 3763834, at *5; *see also Richardson*, 2012 WL 334038, at *5 ("Subjective beliefs or fear about logging overtime hours" are "insufficient to establish an actual company-wide policy" necessary for conditional certification); *see also Folger v. Medicalodges, Inc.,* No. 13-1203-MLB, 2014 WL 2885363, at *2-4 (D. Kan. June 25, 2014) (denying conditional certification where the plaintiffs' reasons for not taking lunch breaks and not recording their time "are all across the board"); *Simmons v. T-Mobile USA, Inc.,* No. H-06-1820, 2007 WL 210008, *6, (S.D. Tex. Jan. 24, 2007) (denying certification because "this is a case involving claims of 'off-the-clock' unpaid overtime, where allegedly dozens (if not hundreds) of different low-level supervisors with wide management discretion in practice violate Defendant's clear, lawful written policies at some or many of Defendant's more than [100] retail locations.").

### 3.    Kim and the Opt-Ins do not allege common tasks they performed off-the-clock, also demonstrating the absence of a common policy.

The types of work Kim and the Opt-Ins alleged they performed off-the-clock varied widely from person to person. The examples run from minor differences (Kim cleaned the branch, but Wile did not) to significant (Kim allegedly worked on a leadership program and regularly trained Bankers

---

[125] Staat Dep. 198:5-199:6, 203:10-18.
[126] Schneider Dep. 151:4-152:13, 162:24-163:19.
[127] Fischer Dep. 156:14-157:8.
[128] Wile Dep. 110:10-12, 133:22-135:11.
[129] Wile Dep. 120:19-121:11, 121:24-122:19.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-cv-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

19

before his branch opened; no other Opt-Ins did).[130] And they include examples of one-off situations that illustrate how localized the evidence is, such as Schneider's allegation that he had to return to the branch because of a finicky safety deposit box and Kim's allegation that he cleared leaves out of the drains on rainy days.[131] These differences, and those more fully described in Sections II.D.1 and II.D.2 above, lead to only one conclusion: "[t]he variety of different circumstances under which the declarants were allegedly required to work unpaid overtime" show no common policy existed. *Castle v. Wells Fargo Fin., Inc.*, No. C 06-4347SI, 2008 WL 495705, at *5 (N.D. Cal. Feb. 20, 2008).

Although Kim claims that U.S. Bank was aware that SSM/BAMs worked overtime hours, in many cases the Opt-Ins testified that their supervisors did not know, or could not have known, that they were working off-the-clock or whether the time they reported was accurate. For example, Fischer said his manager would not know whether the time Fischer recorded on his timesheet was accurate because the manager was out of the branch for up to 50 percent of the times Fischer claims he worked off-the-clock.[132] Staat testified that her managers were not present in the branch when she allegedly worked during her meal period or after the branch closed.[133] Conditional certification is unwarranted where there is no evidence that "supervisors knew about [off-the-clock] practices." *Settles v. Gen. Elec.*, No. 12-00602-CV-W-BP, 2013 WL 12143084, at *4 (W.D. Mo. Feb. 19, 2013) (denying conditional certification).

### 4.   U.S. Bank paid SSM/BAMs overtime.

In the 16 months between when U.S. Bank reclassified the Sales & Service Manager position and when it was dropped into the broader Branch Assistant Manager title, U.S. Bank paid over $1.8 million to the Sales & Service Managers in Kim's proposed collective – including to almost every Opt-In.[134] ***Wile was paid overtime in almost half of the pay periods she worked as a SSM/BAM.***[135] And Staat allowed the SSM/BAMs she supervised after becoming a Branch Manager to record and

---

[130] Kim Dep. 122:24-123:18, 150:10-14; Wile Dep. 152:5-8.
[131] Schneider Dep. 140:8-142:16; Kim Dep. 123:1-8.
[132] Fischer Dep. 190:15-191:18; *see also* Kim Dep. 242:25-245:1 (Branch Manager rarely there on Sundays when he allegedly worked off-the-clock).
[133] Staat Dep. 239:24-240:10, 240:24-241:10, 241:23-242:2, 246:3-15, 277:14-25.
[134] Helgeson Decl. ¶ 3.
[135] Wile Dep. 176:9-177:23, Ex. 9.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-cv-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

1   be paid for all overtime they worked.[136] That U.S. Bank paid a significant amount of overtime

2   further "weakens the allegation that" the Bank required SSM/BAMs to work without getting paid.

3   *See Velasquez v. HSBC Fin. Corp.*, 266 F.R.D. 424, 431 (N.D. Cal. 2010) (denying conditional

4   certification).

5       **5.**     **Kim's arguments and support for the Motion are unsupported by law and facts.**

6       Because Kim and the Opt-Ins (a) acknowledge U.S. Bank's lawful policies prohibited off-

7   the-clock work, (b) do not allege a common unlawful policy applied to them, (c) do not allege they

8   worked off-the-clock for a common reason, and (d) do not allege they performed similar tasks off-

9   the-clock, the Motion instead makes an argument that boils down to allegations that the proposed

10  collective is similarly situated because SSM/BAMs shared "similar job duties" and allegedly worked

11  off-the-clock sometimes. (Mot. at 8:15-23.)

12      But sharing similar job duties is irrelevant in an off-the-clock case and does not meet even

13  the lenient standard for showing employees are similarly situated. Unlike in the misclassification

14  inapt cases Kim cites in support of the Motion,[137] in an off-the-clock case "[l]iability cannot be

15  determined by considering the employee's job duties" because instead the key question is whether

16  employees "were together the victims of a single decision, policy, or plan" to deny them overtime

17  pay. *Benson*, 2007 WL 445456, at *2; *Williams v. Accredited*, No. 1:05-CV-1681, 2006 WL

18  2085312, *4 (N.D. Ga. Jul. 25, 2006) (denying conditional certification); *Richardson,* 2012 WL

19  334038 at *4 (denying conditional certification).

20      The factual foundation for the Motion also does not support conditional certification because

21  "the deposition testimony does not provide evidentiary support for plaintiffs' class-wide

22  allegations." *See e.g., Folger*, 2014 WL 2885363, at *5 (denying certification). Here, Kim and the

23  Opt-Ins gave testimony that contradicted the sworn statements they gave in support of conditional

24  certification. In a glaring example, the Motion relies on the Declaration of Justin Whisenhunt in

25  which Whisenhunt declares under penalty of perjury that he worked off-the-clock as a nonexempt

26

27  [136] Staat Dep. 77:10-17, 85:12-87:22 326:9-14.

28  [137] *See Wilson v. Maxim Healthcare Servs., Inc*., No. 14 Civ. 789 (RSL), 2014 WL 7340480, at *8 (W.D. Wash. Dec. 22, 2014) (alleging misclassification, not off-the-clock work); *Labrie v. UPS Supply Chain Sols., Inc*., No. 08 Civ. 3182, 2009 WL 723599 at *6 (N.D. Cal. Mar. 18, 2009) (same).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-CV-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

21

1    Sales & Service Manager.[138] The problem? *He never worked as a nonexempt Sales & Service*

2    *Manager.*[139]

3          The remaining declarations are contradicted by later deposition testimony. Multiple

4    declarants stated under penalty of perjury that they cleaned their branches off-the-clock; they later

5    testified they never did.[140] Multiple declarants stated that their supervisors told them they could not

6    record all hours they worked; they later testified the supervisor never said that.[141] Bissell's

7    Declaration also named two specific nonexempt SSM/BAMs she allegedly saw working off-the-

8    clock, but she later testified she did not know whether other BAM/SSMs had similar experiences to

9    her and the SSM/BAMs she identified in fact never worked as nonexempt SSM/BAMs.[142]

10          The Motion is not legally or factually supported. And the evidence discussed above

11   overwhelming demonstrates that Kim, the Opt-Ins, and other SSM/BAMs do not meet the similarly

12   situated standard to obtain conditional certification. Conditional certification therefore must be

13   denied.

14   **B.    If the Court grants conditional certification, it should limit notice to those SSM/BAMs**

15   **who worked in the three years and 120 days before the Court's order at only those**
     **branches where Kim and the Opt-Ins claim to have worked off-the-clock.**

16          **1.    Kim and the Opt-Ins have alleged off-the-clock work at a limited number of**

17   **local branches.**

18          Kim and the five Opt-Ins claim to have worked off-the-clock in just six out of over 2,200

19   traditional retail branches where at least 1,600 members of the proposed collective worked. As

20   discussed above, their evidence relates *only* to those six retail branches. If the Court determines that

21   conditional certification is proper, it should issue notice only to SSM/BAMs who worked in the

22   same branches as Kim and the Opt-Ins. Otherwise, notice would be sent not only to those who

23   worked in the Sales & Service Manager position in which U.S. Bank employed Kim and the Opt-Ins,

24   but also to those who worked in the other eight other job positions Kim nor any Opt-In worked in

25   _____

26   [138] Dkt. No. 28.
     [139] *See* Dkt. No. 63.

27   [140] *See e.g.,* Dkt. No. 27, ¶ 8; Bissel Dep. at 96:20 - 97:1; Staat. Decl. ¶¶ 9,16; Staat Dep. at 266:19-24; 291:2-5; Dkt. No.
     32, ¶ 15; Fischer Dep. 157:12-23; Dkt. No. 30, ¶¶ 8, 10; Schneider Dep. 140:1-7; 144:23-145:2.

28   [141] *See e.g.,* Dkt. No. 32, ¶ 15, Fischer Dep. 157:12-23; Staat Dep. 315:1-317:16.
     [142] Dkt. No. 27, ¶ 19; Bissell Dep. 15:4-16:5; Pierre Decl. ¶ 24.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR          **Winston & Strawn LLP**
CONDITIONAL CERTIFICATION                                    333 S. Grand Avenue
CASE NO.: 2:20-CV-00032-RSL                                  Los Angeles, CA  90071
                                                             Tel: 213-615-1700

22

(*i.e.*, On Site Branch Assistants, In Store Co-Managers, In Store Branch Assistants, and Sales & Service Coordinators).[143] There is no evidence before the Court that would support including positions other than the reclassified Sales & Service Managers in notice of this lawsuit. California SSM/BAMs should also be excluded from the notice because the Sales & Service Manager position was intended only to be used outside California.[144]

Accordingly, if the Court decides to permit notice, it should be sent only to individuals who worked in the Sales & Service Manager and Branch Assistant Manager positions Kim and the Opt-Ins worked in at the branches where they claimed to have worked off-the-clock.

### 2. Notice should be limited to individuals employed as SSM/BAMs within three years and 120 days before conditional certification.

The statute of limitations for FLSA claims is at most three years. *See Ray v. California Dep't of Soc. Servs.,* No. CV 17-4239 PA (SKX), 2019 WL 6888050, at *6 (C.D. Cal. Dec. 11, 2019) (citing 29 U.S.C. § 255(a)). It runs separately for each individual, and, unlike in Rule 23 class actions, it "continues to run in the time between the filing of the collective action complaint and the filing of [an individual's] written consent opting in." *Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1122 (W.D. Wash. 2011). The parties also agreed to a limited 120-day tolling period while they attempted to resolve the case. (Dkt. No. 46) (stipulation and order). Therefore, if the court grants conditional certification, notice should be sent only to individuals who worked in within three years and 120 days before the Court's order granting conditional certification.

### 3. If the Court conditionally certifies the action, it should order the Parties to meet and confer over the content and issuance of the notice rather than rubber stamp the notice Kim requests.

There are several issues with the notice and procedure for notice Kim proposes. For example, ***Kim requests that SSM/BAMs' personal information, including dates of birth, last four digits of social security numbers, personal and work email addresses, job titles, and dates and locations of employment, be sent to him directly***. Kim makes no showing that such personal information is required for the limited purpose of providing notice of the lawsuit, and there is no basis for

---

[143] Pierre Decl. ¶ 24.
[144] *Id.* at ¶ 25.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:20-CV-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

23

disclosing it to him personally rather than to a neutral third-party administrator. Kim also requests a reminder notice that is unnecessary and crosses the narrow line between advising individuals of the existence of the lawsuit and encouraging participation. *See Lutz v. Huntington Bancshares Inc.*, 2013 WL 1703361, at *7 (S.D. Ohio Apr. 19, 2013). And the notice states the wrong class period because only SSM/BAMs employed in the last three years, 120 days are eligible to opt-in.

If the Court orders notice to issue to the class, it should first order the parties to meet and confer over the language of the notice, the process for issuing it, and the information necessary to be disclosed to a third-party notice administrator. *See Chetwood v. T-Mobile USA, Inc.*, No. 19-CV-458-RSL, 2020 WL 1689730, at *4 (W.D. Wash. Apr. 7, 2020) (Lasnik, J.) (ordering the parties to meet and confer regarding the language and form of the proposed notice where the defendant raised numerous objections to the form and content of the proposed notices and opt-in form).

## V.    <u>CONCLUSION</u>

For the foregoing reasons, U.S. Bank respectfully requests that this Court deny Kim's Motion for Conditional Certification

RESPECTFULLY SUBMITTED AND DATED this 16th day of February, 2021.

WINSTON & STRAWN LLP

By: _____
Joan B. Tucker Fife (*Admitted Pro Hac Vice*)
Email: jfife@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile:  (415) 591-1400

Emilie C. Woodhead (*Admitted Pro Hac Vice*)
Email: ewoodhead@winston.com
Jason S. Campbell (*Admitted Pro Hac Vice*)
Email: jscampbell@winston.com
Samuel Freeman (*Admitted Pro Hac Vice*)
Email: sfreeman@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile:  (213) 615-1750

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-CV-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Julie S. Lucht, WSBA #31278
Email: jlucht@perkinscoie.com
PERKINS COIE LLP
1201Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-3154
Facsimile:   (206) 359-4154

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.:  2:20-CV-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

25

1

**CERTIFICATE OF SERVICE**

2     I, Samuel R. Freeman, hereby certify that on February 16, 2021, I electronically filed the

3 foregoing with the clerk of the court using CM/ECF system, which will send notification of such

4 filing to the following:

5
Toby J. Marshall, WSBA#327726
Email: tmarshall@terrellmarshall.com
6 TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
7 Seattle, WA 98103-8869
Tel: (206) 816-6603
8 Fax: (206) 319-5450

9
Gregg I. Shavitz, *Admitted Pro Hac Vice*
Email: gshavitz@shavitzlaw.com
10 Paolo C. Meireles, *Admitted Pro Hac Vice*
Email: pmeireles@shavitzlaw.com
11 Logan A. Pardell, *Admitted Pro Hac Vice*
Email: lpardell@shavitzlaw.com
12 SHAVITZ LAW GROUP, P.A.
951 Yamato Road, Suite 285
13 Boca Raton, Florida 33431
Telephone: (561) 447-8888
14 Facsimile: (561) 447-8831

15

16
Justin M. Swartz, *Admitted Pro Hac Vice*
Email: jms@outtengolden.com
17 Chauniqua D. Young, *Admitted Pro Hac Vice*
Email: cyoung@outtengolden.com
18 Sabine Jean, *Admitted Pro Hac Vice*
Email: sjean@outtengolden.com
19 OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
20 New York, New York 10016
Telephone: (212) 245-1000
21 Facsimile: (646) 509-2057

22
DATED this 16th day of February, 2021.
23

By: /s/ Samuel R. Freeman
24 Samuel R. Freeman (Admitted *Pro Hac Vice*)
Email: sfreeman@winston.com
25 WINSTON & STRAWN LLP
333 S. Grand Avenue
26 Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
27 Facsimile:   (213) 615-1750

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION
CASE NO.: 2:20-CV-00032-RSL

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA  90071
Tel: 213-615-1700

26