1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8
9
10
11
12

STEVE KIM, individually and on behalf of
all others similarly situated,

Plaintiff,

v.

U.S. BANCORP and U.S. BANK N.A.,

Defendants.

Cause No. C20-0032RSL

ORDER GRANTING PLAINTIFF'S
MOTION FOR CONDITIONAL
CERTIFICATION AND JUDICIAL
NOTICE

This matter comes before the Court on "Plaintiff's Motion for Conditional Certification and Judicial Notice." Dkt. # 24. Plaintiff is a former Branch Assistant Manager for a U.S. Bank branch in Auburn, Washington. He alleges that he was required to work "off the clock" without compensation. Plaintiff filed this action on behalf of himself and all others who are similarly situated. Other Branch Assistant Managers (also known as Customer Service Managers and/or Sales & Service Managers) (collectively, "BAMs") who have joined the case as opt-in plaintiffs were employed at various U.S. Bank locations in Missouri, Tennessee, and Wisconsin.[1] Plaintiff seeks an order granting conditional certification of a collective action under the Fair Labor Standards Act ("FLSA"), directing U.S. Bank to provide a list of all members of the collective action, and approving the form, content and issuance of various notices to the collective. Having

---

[1] A BAM at an Oregon U.S. Bank location provided a declaration in support of plaintiff's motion, but is not an opt-in plaintiff.

ORDER GRANTING PLAINTIFF'S MOTION
FOR CONDITIONAL CERTIFICATION - 1

reviewed the memoranda, declarations, and exhibits submitted by the parties,[2] the Court finds as follows:

The FLSA provides a mechanism, called a "collective action," through which workers can sue jointly for violations of the statute's overtime compensation and other provisions. *See* 29 U.S.C. § 216(b). The collective action allows a representative plaintiff to bring suit on behalf of a group of workers who are "similarly situated" and serves to (a) reduce the burden on plaintiffs through the pooling of resources and (b) make efficient use of judicial resources by resolving common issues of law and fact together. *See Hoffman-La Rouche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The decision as to whether a collective action is appropriate lies within the court's discretion. *Bollinger v. Residential Capital, LLC*, 761 F. Supp.2d 1114, 1119 (W.D. Wash. 2011).

In the Ninth Circuit, certification of a collective action is generally a two-step process. *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 422 (N.D. Cal. 2015). At the first step, the issue is whether plaintiffs have identified other employees who are similarly situated to them, such that they are potential opt-in plaintiffs and should be given notice of the action. *Heath v. Google Inc.*, 215 F. Supp.3d 844, 850 (N.D. Cal. 2016). Although the named plaintiff bears the burden of showing "substantial similarity" at the notice stage, discovery is not yet complete, and courts must rely on the pleadings and affidavits submitted by the parties. *Bollinger*, 761 F. Supp.2d at 1119. Because the "sole consequence of conditional certification is the sending of court-approved written notice to employees" (*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75

---

[2] This matter can be decided on the papers submitted. Defendants' request for oral argument is therefore DENIED.

ORDER GRANTING PLAINTIFF'S MOTION
FOR CONDITIONAL CERTIFICATION - 2

(2013)), little more is required than "substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan and a showing that plaintiffs are generally comparable to those they seek to represent" (*Heath*, 215 F. Supp.3d at 851 (internal quotation marks omitted)). The standard is lenient, and "is loosely akin to the plausibility standard, commensurate with the stage of the proceedings." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018). If plaintiffs present a reasonable evidentiary basis for their claims of collective injury, conditional certification is the usual result. *Bollinger*, 761 F. Supp.2d at 1119. The second stage of the analysis occurs when discovery is complete and the case is ready to be tried. The party opposing collective certification may then move for decertification, and the court engages in a more searching review. *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466-67 (N.D. Cal. 2004).

Plaintiff alleges that BAMs working for U.S. Bank share similar job duties and responsibilities throughout the country. Since November 2016, they have been classified as non-exempt employees and are therefore entitled to overtime pay for all hours worked in excess of 40 per work week.[3] U.S. Bank schedules BAMs to work only 40 hours each week, but relies on them to work beyond their scheduled hours to complete the requirements of the job. Plaintiff alleges that BAMS are required to perform opening and closing procedures and to respond to telephone calls and text messages from Branch Managers and tellers outside their scheduled hours. In addition, they routinely work through meal breaks, for which they are not paid. District

---

[3] According to U.S. Bank, it reclassified employees in the Sales & Service Manager position from exempt to non-exempt in November 2016 as part of the settlement of an earlier collective action alleging misclassification. In April 2018, U.S. Bank retired the Sales & Service Manager title, rolling that title and eight other job titles into the Branch Assistant Manager position.

ORDER GRANTING PLAINTIFF'S MOTION
FOR CONDITIONAL CERTIFICATION - 3

and Branch Managers instruct BAMs not to record hours in excess of 40 per week unless they

obtain prior approval while knowing that the job responsibilities - which did not change when

U.S. Bank reclassified the position from exempt (overtime ineligible) to non-exempt (overtime

eligible) - require more than 40 hours per week. District and Branch Managers were aware that

BAMs were performing work during lunch and before and after their scheduled work hours

because they new the scope of the job responsibilities, observed the work, and/or obtained

responses to communications sent during "off" hours. When a BAM would include hours over

40 on his or her time sheet, they were often scolded and, in some instances, directed to change

their time sheets to delete overtime hours or spread them into the following week. In support of

these allegations, plaintiff provides his and six other declarations from BAMs who worked for

U.S. Bank in the months and years following their reclassification from exempt to non-exempt.

Dkt. # 26-32.

In response, U.S. Bank argues that it has unambiguous policies in place prohibiting off-

the-clock work and requiring employees to record all hours worked. It asserts that it paid

overtime when it was reported, totaling over $1.8 million to putative collective members

following reclassification. U.S. Bank also points out differences in the experiences of plaintiff's

declarants and argues that (a) the purported members of the collective are not similarly situated

and (b) any wage violations that may have occurred were one-off errors and not the result of a

U.S. Bank policy or practice. U.S. Bank argues that, because the named plaintiff and the opt-ins

performed various types and kinds of tasks during their uncompensated hours, including basic

housekeeping before the branch opened, accepting shipments and deliveries, making sales calls,

conducting security checks and training, handling calls, meeting customers, and answering

ORDER GRANTING PLAINTIFF'S MOTION
FOR CONDITIONAL CERTIFICATION - 4

questions, they are not similarly situated. It also argues that differences in supervisors and location precludes a finding of "substantial similarity." Opt-in plaintiff Heather Staat, for example, worked for two different Branch Managers at the same location, only one of whom allegedly told her to falsify her time sheet. After Staat was promoted to a Branch Manager position, she never pressured or told BAMs under her supervision to work off the clock or to inaccurately report their time, nor did a District Manager pressure her to have her employees work off the clock. Finally, U.S. Bank also argues that the anecdotal experiences of seven BAMs at seven U.S. Bank locations in five states cannot justify notice to over 1,600 employees who worked in over 2,200 locations in 25 states.

At this stage of the proceeding, plaintiff has the burden of providing substantial (not undisputed) evidence that BAMs who worked for U.S. Bank were subject to the same policies that adversely affected the named plaintiff. That is all that is required under the FLSA, which authorizes representative actions to promote efficiencies for the parties and the court. Plaintiff alleges - and has provided supporting declarations - that U.S. Bank had a company-wide policy of discouraging the reporting of overtime. Plaintiff argues that U.S. Bank's policies, as applied, invariably compelled "off the clock" work, that U.S. Bank knew its BAMs worked more than 40 hours per week, and that requests for overtime pay were discouraged and sometimes rejected. U.S. Bank, on the other hand, argues that its written policies forbidding off-the-clock work were applied and that any after hours work were fully compensated. Both parties have taken the position that U.S. Bank has uniform compensation policies that apply throughout its branch offices: they simply disagree on what those policies are. In such circumstances, plaintiff and the opt-ins are similarly situated and may proceed in a collective because they share a similar issue

ORDER GRANTING PLAINTIFF'S MOTION
FOR CONDITIONAL CERTIFICATION - 5

of law or fact that is material to the disposition of their FLSA claims. *See Campbell*, 903 F.3d at 1116-17 (reversing district court's decertification of a collective action where "[t]he Officers' position was that there was a tacit, Department-wide policy discouraging the reporting of earned overtime. If that allegation were adequately supported by the record, the 'similarly situated' requirement would have been met. The Officers would have been alike in a way material to their litigation, as proving (or failing to prove) the existence of such a Department policy would have affected the ultimate findings regarding the occurrence of unpaid overtime and the City's knowledge of it, *see* 29 C.F.R. § 785.11, thus collectively advancing the litigation.").

U.S. Bank may ultimately be able to defeat plaintiff's wage claim by showing that it applied its policies as written and did, in fact, compensate its employees for all hours worked. Or the scope of the collective action may be limited as a result of evidence showing that the pressures plaintiff reports only occurred in certain offices or under certain Branch or District Managers. It is also possible that not all collective members would have a damage claim, having declined to work more than 40 hours per week if the hours were to be uncompensated. At this point, however, both plaintiff's and U.S. Bank's versions of the reality at U.S. Bank locations are plausible, and the truth cannot be ascertained on the preliminary record submitted. *See Campbell*, 903 F.3d at 1109, 1118-19 (noting that the first stage analysis is focused on the adequacy or plausibility of the pleadings while the second stage requires evidence sufficient to create a genuine dispute of material fact); *Droesch v. Wells Fargo Bank, N.A.*, No. C20-6751-JSC, 2021 WL 1817058, at * 3 (N.D. Cal. May 6, 2021) ("To the extent that Defendant challenges these declarations as boilerplate and insists that they are contradicted by deposition testimony or by other evidence, the Court declines to consider these arguments at this early

ORDER GRANTING PLAINTIFF'S MOTION
FOR CONDITIONAL CERTIFICATION - 6

stage."); (*Gonzales v. Charter Commc'ns, LLC*, No. C20-8299-SB, 2020 WL 8028108, at *4 (C.D. Cal. Dec. 4, 2020) ("At this stage, the question is not whose evidence regarding commonality is more believable, but simply whether plaintiffs have made an adequate threshold showing.") (internal quotation marks and citation omitted); *Harris v. Vector Mktg. Corp.*, 716 F. Supp.2d 835, 838 (N.D. Cal. 2010) ("[C]ompeting declarations simply create a he-said-she-said situation; while it may be true that the defendant's evidence will later negate the plaintiff's claims, that should not bar conditional certification at the first stage."). U.S. Bank's challenges will be considered after discovery is complete during the second stage of the collective action analysis. In this preliminary context, the Court finds that plaintiff has sufficiently supported his allegations of a uniform policy resulting in unpaid overtime hours and that other BAMs should be given notice of this litigation and an opportunity to opt in if they, too, feel that they have been injured by U.S. Bank's alleged failure to pay earned wages.

   For all of the foregoing reasons, plaintiff's motion for conditional certification of a collective action (Dkt. # 24) is GRANTED. The Court conditionally certifies the case for collective action under the FLSA on behalf of the following group:

> All persons nationwide who, at any time from April 20, 2018, to the date of final judgment in this matter, are or were employed by U.S. Bank as Branch Assistant Managers (also known as Customer Service Managers and/or Sales & Service Managers).

U.S. Bank shall, within fourteen days of the date of this Order, produce contact information in electronic, delimited, and importable format (including names, last known mailing addresses, and last known email addresses) for all current and former employees who are members of the

ORDER GRANTING PLAINTIFF'S MOTION
FOR CONDITIONAL CERTIFICATION - 7

collective. The Court approves the issuance of judicial notice, email notice, and website notice in substantially the forms attached to this Order. The Court approves the form and content of the consent to join form submitted by plaintiff. Plaintiff shall, within fourteen days of receipt of the contact information, mail, email, and post the approved notices. Putative collective members shall have sixty days from the date the notice is mailed to opt-in (unless the first notice is returned undeliverable and a new address is located, in which case the opt-in period for that putative collective member will close no later than 120 days after the date of the first mailing of the original notice to the putative collective member).

Dated this 18th day of August, 2021.

Robert S. Lasnik
United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION
FOR CONDITIONAL CERTIFICATION - 8