1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7  STEVE KIM,

8              Plaintiff,

9      v.

10  US BANKCORP, US BANK NATIONAL
   ASSOCIATION,

11              Defendants.

CASE NO. 2:20-cv-00032-TL-BAT

**ORDER SETTING BRIEFING
SCHEDULE FOR CLASS
CERTIFICATION AND
DECERTIFICATION MOTIONS
AND DENYING MOTION FOR
PROTECTIVE ORDER**

12      This matter has been referred to the undersigned Magistrate Judge for all pretrial

13  proceedings. Presently pending before the Court are the parties' Joint Proposed Discovery Plan

14  and Briefing Schedule (Dkt. 121) and Plaintiff's Motion for Protective Order (Dkt. 127).

15                          BACKGROUND

16      Plaintiff Steve Kim alleges overtime claims under the Fair Labor Standards Act

17  ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and Washington's Minimum Wage Act, RCW 49.46 *et seq.*

18  ("MWA"), on behalf of a group of nonexempt Branch Assistant Managers in Washington State,

19  who were reclassified by U.S. Bank from exempt-from-overtime to overtime-eligible in

20  November 2016. Dkt. 1, ¶ 1.

21      Plaintiff moved to conditionally certify a FLSA collective on March 19, 2020. Dkt. 24.

22  He submitted his own declaration and those of five others (the "Original Opt-In Plaintiffs") as

23  evidence in support of conditional certification. Dkt. Nos. 26-32. While the motion for

1   conditional certification was pending, U.S. Bank deposed Plaintiff Kim and the Original Opt-In

2   Plaintiffs. In their opposition to the conditional class certification, Defendants asserted key

3   differences amongst the six individuals. Dkt. 69 at 2-4 (citing depositions of Steve Kim and

4   Allison Wile).

5         When the Court granted conditional certification on August 18, 2021, it noted the

6   differences pointed out by U.S. Bank, stating that this type of evidence would be considered at

7   the decertification stage of the proceeding: "U.S. Bank's challenges will be considered after

8   discovery is complete during the second stage of the collective action analysis." Dkt. 74, pp. 4, 7.

9         On August 18, 2021, the Court conditionally certified the case for collective action under

10   the FSLA on behalf of the following group (the "FSLA Collective"):

11        All persons nationwide who, at any time from April 20, 2018, to the date of final
       judgment in this matter, are or were employed by U.S. Bank as Branch Assistant
12        Managers (also known as Customer Service Managers and/or Sales & Service
       Managers).
13

14         The Court also approved issuance of the notice, the form and content of the

15   consent to join, and set timelines for the opt-in procedure. Dkt. 74, p. 8. Court-authorized

16   notice of the lawsuit went out to all potential collective members on September 15, 2021

17   (over 2,800 individuals were sent notice of the lawsuit). *See* Dkt. 75, p. 1.

18         The parties were ordered to submit a "Joint Proposed Second Phase Discovery

19   Order" by December 6, 2021, including, among other things, a deadline for second phase

20   discovery, a briefing schedule for Plaintiff's motion for class certification under Rule 23,

21   and a briefing schedule for Defendants' motion for decertification of the FLSA

22   Collective. Dkt. 76, p. 2. On December 6, 2021, the parties' deadline was continued to

23   December 21, 2021. Dkt. 116 (stipulated motion); Dkt. 117 (order).

ORDER SETTING BRIEFING SCHEDULE FOR CLASS
CERTIFICATION AND DECERTIFICATION MOTIONS
AND DENYING MOTION FOR PROTECTIVE ORDER - 2

On December 21, 2021, the parties filed their Joint Status Report. Dkt. 121. The parties report that the opt-in period for FLSA collective members ended on November 15, 2021; putative collective members who received a re-mailed notice of the collective action had until December 27, 2021 to submit a consent to join form. As of December 20, 2021, 737 individuals have submitted consent to join forms. *Id.*, p. 1.

DISCUSSION AND RULINGS

A.   Request to Continue Joinder Deadline

Plaintiff requests a continuance of his deadline to join additional parties until January 20, 2022 due to the December 27, 2021 deadline for putative opt-in plaintiffs (to whom notices were remailed). Dkt. 121, p. 2. The Court **denies** this request as it previously set timelines for the opt-in procedure. *See* Dkt. 74, p. 8 ("Putative collective members shall have sixty days from the date the notice is mailed to opt-in (unless the first notice is returned undeliverable and a new address is located, in which case the opt-in period for that putative collective member will close no later than 120 days after the date of the first mailing of the original notice to the putative collective member).

B.   Briefing Schedule for Class Certification and Decertification Motions

The Court agrees with Defendants that the briefing schedules for the class certification and decertification motions should be identical and that there is no need to disclose witnesses in advance. Accordingly, it is **ORDERED** that the following briefing schedules shall apply to the motions:

1.   Motion for Class Certification

a.   Plaintiff shall file his motion for class certification (with all evidence, including fact and expert declarations, on which he intends to rely) by **February 3, 2023**;

ORDER SETTING BRIEFING SCHEDULE FOR CLASS
CERTIFICATION AND DECERTIFICATION MOTIONS
AND DENYING MOTION FOR PROTECTIVE ORDER - 3

b.    Defendants shall file their opposition to Plaintiff's motion for class certification (with all evidence, including fact and expert declarations, on which they intend to rely) by **April 4, 2023**;

c.    Plaintiff's reply brief shall be filed by **June 3, 2023**; and noted for the same date.

2.    <u>Motion for Decertification</u>

a.    Defendants shall file their motion for decertification of the FLSA Collective (with all evidence, including fact and expert declarations, on which they intend to rely) by **February 3, 2023**;

b.    Plaintiff shall file his opposition to Defendants' motion for decertification (with all evidence, including fact and expert declarations, on which he intends to rely) by **April 4, 2023**;

c.    Defendants' reply brief shall be filed by **June 2, 2023**; and noted for the same date.

3.    <u>Discovery Related to Certification/Decertification</u>

Discovery related to the motions for class certification and decertification shall close on **June 2, 2023**. If a discovery dispute arises and the parties cannot agree after a reasonable meet and confer process, the parties may file a motion with the Court, pursuant to Local Civil Rule 37(a)(2). Any such discovery dispute shall be filed with the Court by **May 2, 2023.**

C.    <u>Plaintiff's Protective Order (Dkt. 127)</u>

Plaintiff seeks a protective order "limiting the written discovery and depositions Defendants seek to conduct during this stage of the litigation." Dkt. 127, p. 2. There are no pending or outstanding discovery requests. For the reasons stated herein, the Court **denies** the motion.

District courts in the Ninth Circuit apply a two-tiered approach to certification of an FLSA collective action. *Troy v. Kehe Food Distribs., Inc.*, 276 F.R.D. 642, 649 (W.D. Wash.

1   2011); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp.2d 1053, 1070-71

2   (N.D. Cal. 2007); *Wynn v. Nat'l Broad. Co. Inc.*, 234 F. Supp.2d 1067, 1082 (C.D. Cal. 2002).

3          First, a district court determines whether potential class members are similarly situated

4   such that a collective action should be certified for the purpose of sending out notice of the

5   action and providing an opportunity to opt-into the litigation. *Troy*, 276 F.R.D. at 649. At this

6   notice stage, the district court requires "little more than substantial allegations, supported by

7   declarations or discovery, that the putative class members were together the victims of a single

8   decision, policy or plan." *Id*. (internal quotation marks omitted). The standard at this phase is

9   fairly lenient; "plaintiffs need only establish a 'reasonable basis for their claim of classwide'

10  injury." *Khadera v. ABM Indus., Inc.*, 701 F. Supp.2d 1190, 1194 (W.D. Wash. 2010) (quoting

11  *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)). Because there is often

12  little evidence before the court at this stage, the court generally relies on the pleadings and

13  affidavits submitted by the parties in deciding whether potential plaintiffs should receive notice.

14  *Bollinger v. Residential Capital, LLC*, 761 F. Supp.2d 1114, 1119 (W.D. Wash. 2011).

15         The second stage occurs, if at all, on defendant's motion to decertify after discovery is

16  completed. *Wilson v. Maxim Healthcare Servs., Inc.*, Cause No. 14-0789-RSL, Dkt. 28 at 2-4

17  (W.D. Wash. August 18, 2014). At that point, the district court employs a stricter standard to

18  determine whether the plaintiffs are, in fact, similarly situated, considering factors such as the

19  specific duties and conditions of employment of the individual plaintiffs and the various defenses

20  available to the defendant with respect to the individual plaintiffs. *Troy*, 276 F.R.D. at 649;

21  *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 482 (E.D. Cal. 2006). If, in light of the

22  additional evidence acquired during discovery, the Court determines that plaintiffs are not

23  similarly situated, it may decertify the class and dismiss the opt-in plaintiffs without prejudice.

1    *Romero*, 235 F.R.D. at 482.

2         We are at the second stage of this FSLA Collective. Therefore, the Court must apply a

3    stricter standard to determine whether the opt-in plaintiffs are similarly situated and to do so,

4    additional evidence acquired during discovery is crucial. The Court anticipated this need for

5    further discovery when it conditionally certified the class: "U.S. Bank's challenges (to whether

6    the opt-in plaintiffs are similarly situated) will be considered after discovery is complete during

7    the second stage of the collective action analysis." Dkt. 74, pp. 4, 7.

8         As the party seeking to limit discovery, Plaintiff has the burden of showing "that specific

9    prejudice or harm will result" from annoyance, embarrassment, oppression, or undue burden or

10   expense if the protective order is not granted. *DeFreitas v. Tillinghast*, No. 2:12-cv-00235-JLR,

11   2013 WL 209277, at *4 (W.D. Wash. Jan. 17, 2013); *see also* Fed. R. Civ. P. 26(c)(1) and

12   *Hoffman v. Hearing Help Express Inc.*, No. C19-5960 MJP, 2020 WL 7625240, at *2 (W.D.

13   Wash. Dec. 22, 2020) ("A party asserting good cause bears the burden, for each particular

14   document it seeks to protect, of showing that specific prejudice or harm will result if no

15   protective order is granted . . . unsubstantiated allegations of harm and burden will not suffice.")

16   (internal citations and quotations omitted). Motions for protective orders are not based on

17   "speculative allegations of injury." *Angeles Chem. Co. v. McKesson Corp*., No. 10532-TJH-E,

18   2006 WL 8455068, at *2 (W.D. Wash. Mar. 10, 2006) (denying protective order where movant

19   could not identify "a single document" requiring protection).

20        Here, Plaintiff does not seek to protect any specific document and he provides no

21   evidence of specific prejudice or harm. Rather, Plaintiff is asking the Court to prospectively

22   order a set of restrictions on the discovery he anticipates "Defendants intend to seek." Dkt. 127,

23   p. 2. Plaintiff asks that the Court limit Defendants' written and deposition discovery to a

1    "sample" of the FLSA Collective. Plaintiff proposes that, out of the 737 opt-in Plaintiffs, only 36

2    should be subject to written discovery and only 18 should be deposed. Plaintiff also proposes that

3    Defendants' written discovery be further limited to ten interrogatories and ten requests for

4    production for the 36 sample plaintiffs.

5         Plaintiff offers no explanation for why this sample size – less than 5 percent of the FLSA

6    Collective – makes sense, particularly, when at issue are hundreds of employees who worked for

7    different supervisors at different branches nationwide, some of whom worked at the time the

8    position was reclassified, and some of whom signed collective action waivers. The numbers

9    offered by Plaintiff are arbitrary as they are not predicated on any characteristics of the putative

10   collective. *See Duran v. U.S. Bank Nat'l Assn*., 59 Cal. 4th 1, 42 (2014) ("It is impossible to

11   determine an appropriate sample size without first learning about the variability in the

12   population.")

13        To prepare for a motion to decertify an FLSA collective, numerous courts in the Ninth

14   Circuit have held that it is "essential for a defendant to take individualized discovery of the opt-

15   in plaintiffs to determine if they are 'similarly situated' within the meaning of [the] FLSA." *See*

16   *Khadera v. ABM Indus*., Case No. 08-cv- 417, 2011 WL 3651031, at *3 (W.D. Wash. Aug. 18,

17   2011) (collecting cases; *abrogated on other grounds*); *Abubakar v. City of Solano*, No. CIV S-

18   06-2268 LKK EFB, 2008 WL 508911, at *1, *2 (E.D. Cal. Feb. 22, 2008) (concluding

19   "individualized discovery" of 160 FLSA plaintiffs was "appropriate" when defendant indicated it

20   would be challenging whether FLSA plaintiffs were similarly situated); *Coldiron v. Pizza Hut,*

21   *Inc*., No. CV03-05865TJHMCX, 2004 WL 2601180, at *2 (C.D. Cal. Oct. 25, 2004) (concluding

22   defendant could "conduct individualized discovery from the [306] opt-in plaintiffs" when "the

23   question of whether the plaintiffs are similarly situated within the meaning of 29 U.S.C. § 216(b)

1 | [was] still an issue because [the defendant] plainly intend[ed] to move to decertify the class").

2 |     Whether or not to permit to discovery in a Rule 23 class action lies within the sound

3 | discretion of the court. *Kamm v. California City Development Company*, 509 F.2d 205, 209 (9th

4 | Cir.1975). In a situation in which the propriety of a class action cannot be determined without

5 | discovery, it is an abuse of discretion to deny discovery. *Id*. at p. 210. Here, the question of

6 | whether the plaintiffs are similarly situated within the meaning of the FSLA is still an issue

7 | because Defendants plainly intend to move to decertify the class. Based on that reason alone,

8 | discovery is both necessary and appropriate. Clearly, the number of opt-in plaintiffs is much

9 | larger in this case than in the cases permitting individualized discovery.  For example, in

10 | *Coldiron* there were 306 opt-in plaintiffs and here there are 737.

11 |     Given the size of this FSLA Collective and in light of binding and persuasive authority, it

12 | is peculiar that the parties have opted to take an "all or nothing" approach to this issue instead of

13 | putting their heads together to arrive at a manageable and sensible approach, *i.e.*, arriving at a

14 | percentage sample of the collective that is predicated on particular characteristics of the FSLA

15 | Collective and one that involves both Plaintiff and Defendants in the selection process. *See*, *e.g.*,

16 | *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, 2010 WL 5490775, *1, 3 (Nov. 8, 2010)

17 | (permitting individualized discovery from a 10 percent sample of 720 opt-in plaintiffs to enable

18 | defendants to test plaintiffs' FSLA claims).

19 |     Additionally, Plaintiff asks that if an opt-in plaintiff fails to respond to discovery, the

20 | Court not dismiss them but randomly replace them with another opt-in defendant. This request is

21 | premature. Certainly, plaintiffs who fail to respond to discovery may be dismissed. *See e.g.*,

22 | *Flores v. Velocity Express, LLC*, No. 12-CV-05790-JST, 2017 WL 3394144, at *2 (N.D. Cal.

23 | Aug. 8, 2017) (dismissing opt-in plaintiffs who failed to respond to discovery in FLSA collective

1    action); *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, No. 2:08-CV-00722, 2010 WL

2    5490775, at *3 (D. Nev. Nov. 8, 2010) (same). However, such a severe sanction requires the

3    Court to consider several factors: (a) the public's interest in expeditious resolution of litigation;

4    (b) the court's need to manage its docket; (c) the risk of prejudice to the other party; (d) the

5    public policy favoring disposition of cases on their merits; and (e) the availability of less drastic

6    sanctions. *In re: Exxon Valdez*, 102 F.3d 429, 433 (9th Cir.1996); *see also Hyde & Drath v.*

7    *Baker*, 24 F.3d 1162, 1166 (9th Cir.1994) (party seeking dismissal must also show that the non-

8    compliant party's failure to respond was the result of bad faith, willfulness, or fault).

9          Here, there is no pending motion to dismiss and no facts relating to any such non-

10   compliant opt-in plaintiff for the Court to consider. The Court declines to issue an advisory

11   opinion as to whether a non-compliant opt-in plaintiff will be dismissed from this action.

12         Accordingly, the Court **DENIES** Plaintiff's motion for protective order (Dkt. 127). The

13   parties are **ORDERED** to again confer in good faith and to provide to the Court **by February**

14   **17, 2022**, an agreed upon sample percentage of the FSLA Collective, predicated on particular

15   characteristics of the FSLA Collective, with a selection process involving both Plaintiff and

16   Defendants.

17         DATED this 8th day of February, 2022.

18

19                                        _____

20                                        BRIAN A. TSUCHIDA
                                          United States Magistrate Judge

21

22

23

ORDER SETTING BRIEFING SCHEDULE FOR CLASS
CERTIFICATION AND DECERTIFICATION MOTIONS
AND DENYING MOTION FOR PROTECTIVE ORDER - 9